# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANNETTE BOSCO, individually and as Trustee of the BOSCO FAMILY TRUST DATED 7/31/96 and as Trustee of the BOSCO FAMILY TRUST DATED 6/25/96, MARY BOROWIAK, individually and as Trustee of the MARY BOROWIAK TRUST, MICHAEL BOROWIAK, RICHARD RUBEL, and DIANE RUBEL, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 14 C 7487 |
| ROGER F. LEIBOWITZ, ROBERT P. MATHER, RICHARD LANDI, and ALLIED BEACON PARTNERS, LLC, | ) ) ) ) ) | Judge Jorge L. Alonso |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiffs' application for confirmation of arbitration awards granted in their favor and against defendants, as well as defendants' cross-motions to vacate the awards. For the reasons stated below, the Court grants plaintiffs' application, denies defendants' motions, and confirms the arbitration awards.

## BACKGROUND

In this action, plaintiffs (collectively, the "Boscos")[1] seek to confirm, and defendants seek to vacate, arbitration awards issued in proceedings before the Financial Industry Regulatory Authority ("FINRA") on January 27, 2014 and September 12, 2014 in plaintiffs' favor and

---

[1] Plaintiffs are five family members, Annette Bosco, Mary Borowiak, Michael Borowiak, Richard Rubel, and Diane Rubel, and their family trusts. The trusts are the Bosco Family Trust Dated 7/31/96, the Bosco Family Trust Dated 6/25/96, and the Mary Borowiak Trust.

against defendants Roger F. Leibowitz, Robert P. Mather, Richard Landi, and Allied Beacon Partners ("ABP").

This dispute traces back to the entry of an arbitration award that was made in prior proceedings before FINRA, an organization that regulates the securities industry.[2] The award was issued by a three-member panel in arbitration proceeding No. 10-01778 ("Bosco I"), which plaintiffs filed on April 14, 2010 against ABP's predecessors in interest, which the Court will call "Waterford" for brevity's sake. Waterford had employed George Gilbert, a financial advisor who handled the Boscos' investment of their life savings. For the Boscos' largest investment, Gilbert had recommended companies that turned out to be Ponzi schemes, resulting in the Boscos' loss of over one million dollars. The Boscos alleged that Gilbert and his firms had failed to perform due diligence on the investments and disclose the associated risks, made misrepresentations and omissions about them, and recommended them despite their unsuitability for the Boscos' needs. An arbitration hearing was held in May 2013,[3] and on May 21, 2013, the arbitrators found in favor of the Boscos and ordered ABP to pay them $1,200,000 in compensatory damages plus 10 percent interest per year beginning on April 14, 2010, as well as $7,500 in costs and $400,000 in attorneys' fees. (R. 22-5.)

---

[2] At all relevant times, ABP was a member of FINRA and Leibowitz, Mather, and Landi were registered representatives regulated by FINRA.

[3] The hearing was delayed due to proceedings in federal court. Waterford/ABP had filed a declaratory action in the Eastern District of Virginia seeking a judgment that it was not required to arbitrate the dispute with the Boscos. The magistrate judge and district judge disagreed and ordered Waterford/ABP to arbitrate. Waterford/ABP appealed, and the Court of Appeals for the Fourth Circuit affirmed.

Several days after the entry of the arbitration award, FINRA advised ABP that it had to "book" the award as a liability against its net capital. The upshot was that ABP's net capital would be insufficient to remain in business under FINRA and SEC rules. ABP sought to compromise the award with plaintiffs, but the parties' settlement negotiations failed.

On July 18, 2013, ABP brought an action in federal court to vacate the arbitration award, and plaintiffs cross-moved to confirm it. In February 2014, Judge Kendall entered a memorandum opinion and order denying ABP's motion to vacate the arbitration award, finding the motion "wholly meritless." She also granted plaintiffs' motion to confirm the award, converted it into a judgment against ABP, and ordered ABP to pay the Boscos' reasonable attorneys' fees for the federal-court proceeding. *Allied Beacon Partners, Inc. v. Bosco*, No. 13 C 5165, 2014 WL 551712 (N.D. Ill. Feb. 13, 2014).[4]

Before ABP had filed the federal action before Judge Kendall, plaintiffs had filed on June 13, 2013 a second arbitration proceeding before FINRA, No. 13-01787 ("Bosco II"), against Mather, Leibowitz, Landi and ABP, for their failure and refusal to pay the award rendered in Bosco I. Plaintiffs asserted claims against Mather, Leibowitz, Landi, and ABP for breach of contract (including FINRA rules), negligence, and equitable and injunctive relief, and additional claims against Leibowitz and Landi as "control persons" for securities fraud, violation of the Illinois Securities Act, fraud, constructive fraud, negligence, breach of contract, and breach of fiduciary duty. Plaintiffs also named as a respondent RBC Capital Markets, LLC ("RBC"), due to the fact that it held ABP's assets as its clearing firm.[5] In July 2013, RBC stipulated that it

---

[4]The previous facts about Bosco I are drawn from Judge Kendall's opinion.

[5]RBC was also named as a defendant in this action, but it was dismissed after depositing with the Clerk of Court the funds it held as ABP's custodian. (R. 44.)

would not release any of ABP's assets unless the arbitration panel ordered it to do so, and the three-member arbitration panel issued a stipulated award on January 27, 2014 so requiring. (R. 1-2.) This award was given a separate case number, No. 14-00023, but the Court considers it part of Bosco II.

On July 2, 2014, the respondents filed motions to dismiss the arbitration proceeding. The motions were briefed, and the same three-member arbitration panel heard oral argument and denied the motions on August 19, 2014. An arbitration hearing was then held in Chicago from September 2, 2014 to September 5, 2014. On September 12, 2014, the panel issued an award in favor of the Boscos as follows: Mather and Leibowitz are jointly and severally liable to plaintiffs in the amount of $700,000, plus 10 percent interest per year beginning on June 20, 2013; Landi is liable to plaintiffs in the amount of $350,000 plus 10 percent interest per year beginning on June 20, 2013; and Mather, Leibowitz, and Landi are jointly and severally liable to plaintiffs for $600 in costs. The award sets out a specific division of these sums among the plaintiffs. The panel also ordered RBC to turn over to plaintiffs all of ABP's funds that it was holding (which was $271,108.83). (R. 1-1.)

On September 26, 2014, the Boscos filed the instant action seeking confirmation of the awards issued in Bosco II. Defendants cross-move to vacate the awards. For convenience, the Court will refer to the awards as a single award in its discussion.

## DISCUSSION

The Federal Arbitration Act ("FAA") "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Méré*, 51 F.3d 686, 688 (7th Cir. 1995). Confirmation of arbitration awards is "usually routine or summary." *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691-92 (7th

4

Cir. 2004). "If there is an agreement to arbitrate, and the issues presented to the arbitrator fell within that agreement, courts may overturn the arbitrator's award only on very narrow grounds." *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 99 (7th Cir. 1996); *see also Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006) ("It is tempting to think that courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, but they are not."); *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994) ("Judicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all."). "Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration award." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008). The FAA states that an arbitral award may be set aside in only four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *see also Wise*, 450 F.3d at 268.

Defendants rely on the fourth ground, § 10(a)(4), and contend that the arbitrators exceeded their powers. Mather argues that the panel "improperly dispense[d] its own brand of industrial justice," "flaunted [sic] the law, taking on the role of 'Robin Hood'," and "dump[ed] corporate law on its head." (R. 22, Mather's Appl. & Counter-Mot. Vacate Arbitration Award 1-2.) He further argues that "[u]nder well-settled and undisputed Virginia law (which was the law

5

applicable to Plaintiffs' claims in the arbitration suit), a corporation is a legal entity separate and distinct from its officers, directors, and shareholders," and "[p]laintiffs did not even attempt to allege facts sufficient to pierce the corporate veil." (*Id.* 13-14.)[6] Leibowitz, Landi, and ABP (the "ABP defendants") maintain that the award "scuttles the well-established law" and that there is "no conceivable basis for a finding of liability." (R. 27, ABP Defs.' Appl. & Counter-Mot. Vacate Arbitration Award 8.)[7] All of the defendants analyze the applicable law and explain why they believe the award had no legal basis.

Defendants' briefs are a rehash of the arguments they presented in the arbitration proceedings, with some added hyperbole. The Court agrees with plaintiffs that defendants' motions are nothing more than thinly-veiled appeals of the award. "A party seeking relief under [§ 10(a)(4)] bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, --- U.S. ----, 133 S. Ct. 2064, 2068 (2013). The question is not whether the arbitrators made errors of law or fact, even serious ones, but whether they exceeded their authority.

---

[6]Mather also asserts that the award should be vacated because the panel engaged in "manifest disregard of the law." (*Id.* 11-13.) He concedes that the Seventh Circuit held in *Affymax, Inc. v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 660 F.3d 281, 284-85 (7th Cir. 2011), that except where the arbitrator directs the parties to violate the law (which it is undisputed did not occur here), the "manifest disregard" standard is not a ground on which a court may reject an arbitration award under the Federal Arbitration Act. Mather argues, however, that *Affymax* was wrongly decided. (R. 22, Mather's Appl. & Counter-Mot. Vacate Arbitration Award 11-12.) This argument is misplaced. *Affymax* is controlling law in this Circuit, and this Court is not at liberty to simply disregard Seventh Circuit precedent. *See, e.g.*, *Gacy v. Welborn*, 994 F.2d 305, 310 (7th Cir. 1993) (district courts are not permitted to disregard Seventh Circuit authority). In any event, Mather fails to show that the arbitrators deliberately disregarded what they knew to be the law.

[7]The ABP defendants also present a completely undeveloped, and therefore waived, argument that there "was evident partiality in the arbitrators." (*Id.* 2.) *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

6

The arbitration panel did not include any reasoning in its award. But "[m]any an arbitration ends with an award saying who won but omitting reasons," and the arbitrator is not obliged "to discuss every issue at length, or at all." *Affymax*, 660 F.3d at 285; *see also Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 312 (7th Cir. 1981) ("The arbitrators gave no reasons for their award, but they are not required to do so."). And defendants do not argue that the arbitrators considered issues that were beyond the scope of the parties' agreement to arbitrate. In an effort to get another bite at the apple, and in the guise of claiming that the panel exceeded its powers, defendants essentially invite this Court to wade through all of the claims and arguments made and authorities cited in the arbitration proceeding. The Court declines to do so. The disappointed party to arbitration is not allowed to "bring his dispute into court by the back door," *Baravati*, 28 F.3d at 706, and the Court is not empowered to substitute its own reasoning for that of the arbitrators. Defendants claim that in the arbitration, plaintiffs cited no legal authority whatsoever in support of their claims. (R. 27, ABP Defs.' Appl. & Counter-Mot. Vacate Arbitration Award 3; R. 22, Mather's Appl. & Counter-Mot. Vacate Arbitration Award 8.) That is false. Plaintiffs presented multiple legally-cognizable claims and cited legal authorities both in their written submissions and during the multi-day hearing. (*See, e.g.*, R. 22-8, Am. St. Claim; R. 30-3, Claimants' Arbitration Br.; R. 22-4, Hr'g Tr.)[8] It is defendants' position, of course, that those authorities did not warrant relief on the claims, but that is an issue beyond the scope of this Court's review.

---

[8] And the award states that the panel's decision was made "[a]fter considering the pleadings, the testimony, and the evidence presented at the hearing." (R. 1-1 at 4.)

Defendants have failed to demonstrate that the arbitrators exceeded their powers under § 10(a)(4) of the FAA. Accordingly, their motions are denied, the plaintiffs' application for confirmation of the arbitration awards is granted, and the awards are confirmed.[9]

## CONCLUSION

For the reasons explained above, the Court grants plaintiffs' motion [1] to confirm the arbitration awards and denies defendants' motions [22, 27] to vacate the arbitration awards. The FINRA arbitration awards of January 27, 2014 (in FINRA No. 14-00023) and September 12, 2014 (in FINRA No. 13-01787) are confirmed and converted into a judgment against defendants. The Clerk of Court is directed to disburse to plaintiffs the $271,108.83 deposited with the court by RBC Capital Markets, LLC on December 19, 2014.

**SO ORDERED.**  ENTERED:  July 20, 2015

_____
**JORGE L. ALONSO**
**United States District Judge**

---

[9]Plaintiffs seek an award of their reasonable attorneys' fees incurred in responding to defendants' motions. (R. 30, Pls.' Mem. Resp. Mather's Mot. Vacate 20; R. 31, Pls.' Mem. Resp. ABP Defs.' Mot. Vacate 22.) But they fail to cite the basis for their request or develop any argument for such an award and therefore waive it.